**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
WILLEM LUST,                                       :
                                                   :
                               Plaintiff,          :
                                                   :        Case No. 10-CV-8963 (WHP)
                         v.                        :
                                                   :
NEDERLANDSE PROGRAMMA STICHTING,                   :
and CAREL KUYL, in his official and                :
individual capacities,                             :
                                                   :
                               Defendants.         :
------------------------------------------------------------X


# MEMORANDUM OF LAW IN OPPOSITION TO
# <u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>

THOMPSON WIGDOR LLP

85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS .................................................................................2

ARGUMENT .....................................................................................................5

    I.    DEFENDANTS SHOULD NOT BE PERMITTED TO USE THE DOCTRINE OF FORUM NON CONVENIENS AS A BASIS TO FORUM SHOP ............................5

        A.    The Netherlands Is Not An Adequate Alternative Forum ...................................6

        B.    Mr. Lust's Choice Of Forum Should Be Given Heightened Deference...............7

        C.    Defendants Have Not Met Their Burden To Establish That The Private And Public Interest Strongly Favors Defendants' Choice of Forum ...........................8

                1.    Private Interest Factors Do Not Strongly Favor Defendants' Forum Choice.................................................................................................8

                2.    Public Interest Factors Do Not Strongly Favor Defendants' Forum Choice.................................................................................................10

        D.    Defendants' Motion To Dismiss Is an Act of Forum Shopping.........................12

    II.    THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS ...12

        A.    This Court Has General Personal Jurisdiction Over Defendant NPS.................13

        B.    This Court Has Specific Personal Jurisdiction Over Defendant NPS ................15

                1.    New York's Long-Arm Statute Conveys Specific Personal Jurisdiction.....16

                      a.  NPS Transacted Business in New York Under § 302 (a)(1) ...................16

                      b.  NPS's Conduct Was Felt Within The State.............................................18

                      c.  NPS Used and Uses Property Within The State .....................................20

                  2.    Permitting Personal Jurisdiction Over NPS Comports With Due Process...21

        C.    This Court Has Personal Jurisdiction Over Defendant Kuyl...............................22

1.   The New York Long-Arm Statute Applies to Kuyl ....................................22

2.   Permitting Personal Jurisdiction Over Kuyl Comports With Due Process ..23

CONCLUSION...................................................................................................................24

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                    **Page**

*A.I. Trade Finance, Inc. v. Petra Bank*,
    989 F.2d 76 (2d Cir. 1993) .................................................................................13

*Bank of Credit and Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pakistan*,
    273 F.3d 241 (2d Cir. 2001) ................................................................................6

*Bensusan Restaurant Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997) .................................................................................16

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .............................................................................................21

*Central Gulf Lines, Inc. v. Cooper/T. Smith, Stevedoring*,
    664 F. Supp. 127 (S.D.N.Y. 1987) .....................................................................14

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002) ......................................................................... *passim*

*Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*,
    41 F. Supp. 2d 447 (S.D.N.Y. 1999) ...................................................................6

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ...............................................................................................7

*In re European Aeronautic Defence & Space Co. Sec. Litig.*,
    703 F. Supp. 2d 348 (S.D.N.Y. 2010) .................................................................6

*Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007) ...............................................17, 22, 23

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .............................................................................................21

*Iragorri v. United Tech. Corp.*,
    274 F.3d 65 (2d Cir. 2001) ..............................................................................7, 12

*Itoba Ltd. v. LEP Group PLC*,
    930 F. Supp. 36 (D. Conn. 1996) ........................................................................9

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947) ...............................................................................................9

*Launer v. Buena Vista Winery, Inc.*,
    916 F. Supp. 204 (E.D.N.Y. 1996) ..................................................................17, 19, 20

*Levisohn Lerner Berger & Langsam v. Med. Taping Sys., Inc.*,
    10 F. Supp. 2d 334 (S.D.N.Y. 1998) .......................................................................13, 16

*Maersk, Inc. v. Neewra, Inc.*,
    554 F. Supp. 2d 424 (S.D.N.Y. 2008) .......................................................................5, 6

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) .......................................................................................13

*Morelli v. Cedel*,
    141 F.3d 39 (2d Cir. 1998) .......................................................................................11

*Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt*,
    684 F.2d 232 (2d Cir. 1982) ....................................................................................9, 10

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .................................................................................................7

*SAS Group, Inc. v. Worldwide Inventions, Inc.*,
    245 F. Supp. 2d 543 (S.D.N.Y. 2003) .......................................................................17

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt, LLC*,
    450 F.3d 100 (2d Cir. 2006) ....................................................................................16, 22

*Sunward Electronics, Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) .......................................................................................21, 23

*United States v. Burke*,
    504 U.S. 229 (1992) .................................................................................................19

*Windt v. Qwest Commc'ns Int'l, Inc.*,
    544 F. Supp. 2d 409 (D.N.J. 2008) ..........................................................................6

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000) .......................................................................................5

**STATE CASE**

*Laufer v. Ostrow*,
    434 N.E.2d 692 (N.Y. 1982) ....................................................................................13, 14, 15

**STATUTES AND OTHER AUTHORITIES**

N.Y. C.P.L.R. 301 (McKinney 2010) *et seq*........................................................................13, 21

N.Y. C.P.L.R. 302 (McKinney 2010) *et seq*................................................................16, 19, 20

Plaintiff Willem Lust ("Mr. Lust" or "Plaintiff") respectfully submits this memorandum of law, and the accompanying Declaration of David K. Reid ("Reid Decl."), in opposition to Defendants De Nederlandse Programma Stichting ("NPS" or the "Company"), and Carel Kuyl's ("Kuyl") (together, "Defendants") motion to dismiss.  For the reasons set forth below, Defendants' motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Mr. Lust brings this action against his employer, NPS (now Stichting NTR), and former supervisor Kuyl, for unlawful, discriminatory employment acts due to his affliction with Parkinson's disease.  Compl. ¶ 1.  Specifically, NPS prematurely ended Mr. Lust's tenure as U.S. correspondent and demoted him to the position of "special reporter" upon learning of the filing of Mr. Lust's complaint.  *See* Declaration of Willem Lust ("Lust Decl.") ¶ 20.  In an attempt to avoid responsibility for their discriminatory conduct, Defendants move to dismiss this action on purported grounds that New York is an inconvenient forum.  In reality, Defendants are "shopping" for a more favorable forum where Mr. Lust's ability to vindicate his rights are substantially diminished.  This is not a proper basis to have a case dismissed.  Amazingly, Defendants allege that Mr. Lust is engaging in forum shopping.  Nothing could be further from the truth.  In January 2007, after eight years with the Company, Defendant NPS assigned Mr. Lust to the position of U.S. correspondent based in New York where he had an office in his residence.  It was during his employment and residence in New York when Mr. Lust was discriminated against by his employer and supervisor.  Defendants now claim that despite a continuous and ongoing presence in New York for more than four years, Mr. Lust cannot avail himself of the federal, state and local anti-discrimination laws because the correspondentship was a "temporary" assignment.  This characterization is self-serving and ignores the length of

Mr. Lust's assignment in New York, the nature of the position, and the usual contract terms extended to past and present U.S. correspondents. Moreover, and importantly, Mr. Lust was transferred out of New York and back to the Netherlands only *after* this action was commenced, constituting not only further retaliation, but an obvious attempt to bolster their argument that New York is an inconvenient forum. Defendants cannot "create" inconvenience by further retaliating against Mr. Lust by transferring him back to the Netherlands.

## STATEMENT OF FACTS

After a prolonged career as a nationally-renowned journalist, Mr. Lust began his employment with NPS in 1999 as a reporter. Compl. at ¶ 15. Mr. Lust's exemplary performance at NPS earned him the most important and prestigious assignments, culminating with his appointment as U.S. correspondent, set to begin in January 2007. *Id.* at ¶ 21. NPS instructed Mr. Lust to set up an office in his apartment, and when he eventually moved to New York City, he obliged. Lust Decl. at ¶ 3. NPS issued Mr. Lust business cards bearing his New York address. Reid Decl. Ex. A. Additionally, NPS funded a bank account in Mr. Lust's name from which he could withdraw money needed for expenses and travel. Lust Decl. at ¶ 3. Furthermore, NPS executed a contract with Mr. Lust's wife to serve as his camera operator in New York, and the pair had a number of interns stationed in New York City to assist with various tasks connected to their production efforts. *Id.* at ¶ 4.

Although Mr. Lust had been diagnosed with Parkinson's disease in the summer of 2005, Compl. at ¶ 18, his doctors advised that he would suffer no perceptible symptoms for a considerable length of time, *Id.* at ¶ 19, and his first eighteen months as U.S. correspondent were only met with praise, from both the NPS headquarters and Kuyl himself. Compl. at ¶ 24; Lust Decl. at ¶ 9. In June 2008, however, Kuyl notified Mr. Lust that he had to surrender his post as

U.S. correspondent as soon as possible, explaining that Mr. Lust's Parkinson's disease was the reason for the abrupt decision to prematurely remove Mr. Lust from the job that Kuyl himself called "the best job in journalism." Compl. at ¶ 25; Lust Decl. at ¶ 10.  Dr. Alessandro Di Rocco, Mr. Lust's treating neurologist at New York University in Manhattan, confirmed the previous diagnosis that there were no visible symptoms and that Mr. Lust could continue his work, unimpaired, for at least ten additional years. Compl. at ¶ 30.  Kuyl refused to negotiate with Mr. Lust or even speak with any other physician that could explain the slow progression of the disease and any possible remedial operations. *Id.* at ¶ 31.

Under extreme pressure from Kuyl, Mr. Lust resigned from the U.S. correspondent position effective January 1, 2011 with the understanding that he would be given a comparable position. *Id.* at ¶ 31-33.  Kuyl, however, refused to honor his promise to place Mr. Lust in a comparable position, as Mr. Lust was demoted to the position of "special reporter,"[1] basically a glorified intern that rarely appears on camera and has none of the perks Mr. Lust enjoyed even before embarking for New York to become NPS's U.S. correspondent. *Id.* at ¶ 37-39; Lust Decl. at ¶ 22, 24.  Mr. Lust has appeared on camera only once, for a total of nineteen seconds, since his demotion nearly six months ago, obviously refuting Defendants' contention that he remains an on-screen personality since his demotion. Lust Decl. at ¶ 24.  Moreover, it was made clear to Mr. Lust that the demotion to "special reporter" in the Netherlands was, in part, punishment for commencing a legal proceeding against the Company. *Id.* at ¶ 20.

While Mr. Lust is a citizen of the Netherlands, the discriminatory conduct under which this action arose all stemmed from his four year employment and residence in New York.  Mr.

---

[1]    Defendants' counsel used the term "special" reporter to characterize Mr. Lust's title, but Mr. Lust is unaware as to the meaning of this term within the Company.  Thus, the moniker "special" appears to be nothing more than a smokescreen employed by Defendants.

3

Lust's four year employment in the United States was hardly "temporary" as Defendants self-servingly suggest.  Mr. Lust wasn't on a mere two-week assignment to cover a specific news story.  Rather, he was stationed in New York for *four years* with an office, expense account, local business card, and a production team.  Lust Decl. at ¶ 2-3.  Although Joop Daalmeijer, the director general of NPS, offered Mr. Lust a position in August 2010 that would allow him to continue to report on foreign stories with his wife as his camera operator, Daalmeijer withdrew the proposal in December 2010 as punishment for Mr. Lust bringing legal action against the Company.  *Id.* at ¶ 20.  The fact that NPS forced Mr. Lust to return to the Netherlands is inconsequential, as Defendants left Mr. Lust with no choice out of fear of losing his job and health insurance coverage while his wife was pregnant with their first child.  *Id.* at ¶ 21.  Clearly, NPS extradited Mr. Lust to the Netherlands and pushed him to a back office after he commenced this action in an attempt to avoid the repercussions of their actions pursuant to the federal, state, and city laws of this jurisdiction.

Additionally, many key witnesses would be unavailable to testify in the Netherlands, but would voluntarily testify in the United States.  Dr. Di Rocco remains in New York and is still Mr. Lust's treating physician.  *Id.* at ¶ 29.  One of Mr. Lust's interns, Lynn Berger, remains in New York City as a graduate student at Columbia University, and Plaintiff will question Ms. Berger regarding her observations of his performance and job responsibilities.  *Id.* at ¶ 32.  Tom Kleijn, Mr. Lust's successor as U.S. correspondent, remains in New York City and Plaintiff will question Mr. Kleijn regarding Mr. Lust's departure, the nature of the position, and the career progression following a position as U.S. correspondent.  *Id.* at ¶ 33.  Mr. Kleijn works out of an office in New York City for the Defendant Company.  *Id.*  Former U.S. correspondents Max Westerman, Charles Groenhuijsen, and Gerard van der Wulp, and present Nederlandse Omroep

Stichting ("NOS") correspondent Eelco Bosch van Roosenthal also reside in the United States and Plaintiff will question them on similar issues as Mr. Kleijn.  *Id.* at ¶ 34.

Defendants also contend that there would be "substantial expense and inconvenience" if forced to litigate in the United States because "virtually all of the documents in this case are located in the Netherlands."  Defs' Mem. at 2.  This is vastly overstated.  There is likely limited document discovery to be had in this case and the burden to translate any documents will prove minimal.  The main documents in this case are email communications stored in electronic databases accessible across the globe.  Other key documents are Mr. Lust's personnel file, which Defendants have promised to turn over in the near future, and an employee handbook, to the extent one exists.  This is not a document intensive case and, thus, there will not be a heavy burden placed on Defendants to produce documents if this case rightfully remains before this Court.

## **ARGUMENT**

### I.    **DEFENDANTS SHOULD NOT BE PERMITTED TO USE THE DOCTRINE OF FORUM NON CONVENIENS AS A BASIS TO FORUM SHOP**

The Second Circuit analyzes motions to dismiss pursuant to forum non conveniens grounds using a three-prong test.  The court must determine (1) whether the defendant's proposed alternative forum is adequate; (2) the degree of deference owed to the plaintiff's choice of forum; and (3) whether defendants have shown that public and private interest factors strongly favor the defendant's choice of forum.  *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30-31 (2d Cir. 2002); *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 451 (S.D.N.Y. 2008) (citations omitted).  The defendant seeking dismissal carries the "burden of demonstrating that the plaintiff's choice of forum is not convenient."  *DiRienzo*, 294 F.3d at 29 (citing *Wiwa v. Royal*

*Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000)).  Defendants have failed to meet their burden because Defendants' proposed alternative forum would substantially prejudice Mr. Lust's ability to vindicate his rights under the anti-discrimination laws and prevent enforcement of the compelling public interest that all employees in this city, state and country be free from invidious discrimination.  Defendants' desire to litigate in a more favorable forum is not a basis to have this action be dismissed.

    **A.**    <u>**The Netherlands Is Not An Adequate Alternative Forum**</u>

       Mr. Lust's claims cannot be adequately resolved in the Netherlands.  The Second Circuit has held that "[a]n alternative forum is generally adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits litigation of the subject matter of the dispute." *Maersk*, 554 F. Supp. 2d at 453 (quoting *Bank of Credit and Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001)).  However, "where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Id.* (internal citations and quotations omitted).  As set forth below, the Netherlands is an inadequate forum for adjudication of Mr. Lust's claims because the time and monetary expenditures to Mr. Lust will effectively eviscerate his claims.[2]

---

[2]     Defendants attempt to show that the Netherlands is an adequate forum because prior courts have held that the Dutch court system was adequate to resolve securities fraud, intellectual property and other claims not involving discrimination or retaliation.  *See e.g. In re European Aeronautic Defence & Space Co. Sec. Litig.*, 703 F. Supp. 2d 348, 360 (S.D.N.Y. 2010) (finding Netherlands adequate to address securities fraud litigation); *Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 421 (D.N.J. 2008) (same); *Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*, 41 F. Supp. 2d 447, 452 (S.D.N.Y. 1999) (holding Dutch court system adequate alternative for breach of contract, copyright infringement, and quantum meruit claims).  This argument misses the mark completely because Second Circuit authority requires the inquiry regarding forum adequacy to be specific to the "subject matter of the dispute." *Maersk*, 554 F. Supp. 2d at 453.

The time and monetary expenditures that Mr. Lust will have to endure in the Netherlands will force him to abandon his claims against Defendants.  Mr. Lust will find it practically impossible to obtain a meaningful recovery for the harm caused by Defendants' discrimination in the Dutch court system.  *See* Declaration of Dirk Jan Rutgers ("Rutgers Decl.") at ¶ 24 (calculating capped damages for Mr. Lust in Dutch court system, assuming certain factors).  Due to the absence of contingency fee arrangements in the Netherlands, Mr. Lust will have to pay out of pocket for his attorney's fees in an effort to recover a comparatively nominal sum of money from Defendants.  *Id.* at ¶ 31.  This sum is not recoverable through an attorneys' fee award in The Netherlands.  *Id.* at ¶ 32.  Additionally, Mr. Lust would be deprived of a trial by jury in the Netherlands, as a trial by one's peers does not exist in the Dutch court system.  *Id.* at ¶ 33.  Therefore, it is clear that Defendants want to shift this lawsuit to the Netherlands to force Mr. Lust to drop his claims.  It is unmistakable that the Netherlands would thus prove to be a clearly unsatisfactory forum to adjudicate Mr. Lust's claims, and this Court should deny Defendants' motion to dismiss on forum non conveniens grounds.

### B.   Mr. Lust's Choice Of Forum Should Be Given Heightened Deference

As a general rule, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 70-71 (2d Cir. 2001) (en banc) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  Although a foreign plaintiff's choice of forum is entitled to less deference, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981), a plaintiff is still entitled to heightened deference "where [he] has temporarily or intermittently resided in [a] foreign jurisdiction."  *Iragorri*, 274 F.3d at 75 (overturning district court's dismissal on forum non conveniens grounds, in part, because plaintiff's choice of forum in United States was appropriate where plaintiff resided intermittently

between United States and native Colombia).  Accordingly, Mr. Lust is entitled to deference with regard to his choice of forum.

Mr. Lust's choice of the Southern District of New York as the forum for his discrimination and retaliation claims should be given similar deference by the Court.  Mr. Lust resides intermittently between the Netherlands and his New York apartment, where he frequently stays as he attempts to complete his book on American political culture which is scheduled for publication next year.  Lust Decl. at ¶ 27.  Mr. Lust filed his claims against Defendants while he was permanently residing in the United States, but at the start of 2011, he was forced back to the Netherlands by NPS because the Company stripped him of the U.S. correspondent title and demoted him to the position of "special reporter."  *Id.* at ¶ 20, 24.  Defendants' extradition of Mr. Lust back to the Netherlands should not deprive him of the deference he is owed in choosing the forum for his claims, especially given his previously permanent and now intermittent residence between New York and the Netherlands.  Therefore, Defendants' assertion that Mr. Lust's choice of forum should receive little or no deference is misplaced, and this Court should deny Defendants' motion to dismiss.

**C.      Defendants Have Not Met Their Burden To Establish That The Private And Public Interest Strongly Favors Defendants' Choice of Forum**

Defendants have failed to carry the burden to prove that private and public interest factors *strongly favor* the Netherlands as the proper forum.  *DiRienzo*, 294 F.3d at 30-31.  In fact, it is in both the private and public interest that New York remains the forum for this action.

1.      Private Interest Factors Do Not Strongly Favor Defendants' Forum Choice

The Second Circuit employs five private interest factors that, only if weighing strongly in favor of the defendant's choice of forum, will support a defendant's motion to dismiss on forum

non conveniens grounds.  *Id.*  The private interest factors include: "(1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive."  *Id.* at 29-30 (citations omitted).  Defendants cannot establish that these factors weigh heavily in favor of a Netherlands forum for this action.  In fact, these factors strongly favor Mr. Lust's forum choice.

In *DiRienzo*, the Second Circuit examined the first three factors and found that Defendants had failed to meet their burden of establishing that the private interest factors weighed heavily in their favor.  *Id.* at 30.  In examining the first factor, the court noted that "plaintiffs should not [be] deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience."  *Id.* (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).  The court found unconvincing defendants' conclusory statement that transporting the documents from Canada to the United States would be oppressive and noted that "absent an explanation, less weight should be accorded this factor."  *DiRienzo*, 294 F.3d at 30. (citing *Itoba Ltd. v. LEP Group PLC*, 930 F. Supp. 36, 44 (D. Conn. 1996)).  Regarding the second and third factors, the Second Circuit found that given today's advances in international travel, transportation from Canada to the United States for witnesses would not be overly burdensome "in terms of cost or time."  *Id.*  In the event that certain third-party witnesses are unwilling to appear in the United States, the court noted that use of letters rogatory were an adequate alternative for obtaining the testimony of such witnesses.  *Id.* (citing *Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt*, 684 F.2d 232, 235 (2d Cir.

1982)).  Therefore, the court held that defendants had not shown that any of the private interest factors weighed heavily in favor of dismissal on forum non conveniens grounds.  *Id.* at 30-31.

Defendants have similarly fallen short of their burden in this case.  The bulk of the relevant documents in this case are email communications stored electronically and available for production anywhere in the world.  Thus, Defendants would not necessarily have to print and ship those documents across the Atlantic.  Other than email communications, discovery in this case will not be particularly voluminous.  Therefore, the translation burden would be minimal. As explained above, many of the key witnesses reside in New York or elsewhere in the United States, including Mr. Lust's treating physician, his former intern, former U.S. correspondents, present NOS correspondent, and his successor.  *See*, *supra*, at 5-6.  Plaintiff is amenable to traveling to the Netherlands to secure testimony from any witnesses present in the Netherlands that are unable or unavailable to travel to the U.S.  To the extent there may be unwilling third-party witnesses in the Netherlands, Mr. Lust can secure their testimony through letters rogatory as suggested by the *DiRienzo* court.  Furthermore, litigation in the Netherlands would prove more cost prohibitive to Plaintiff than this lawsuit in the United States based on the absence of contingency fees and attorneys' fee awards.  *See* Rutgers Decl. at ¶ 31-32.  Therefore, Defendants have not met their burden of establishing that the private interest factors weigh heavily in their favor and this Court should deny Defendants' motion to dismiss on forum non conveniens grounds.

2.    Public Interest Factors Do Not Strongly Favor Defendants' Forum Choice

Defendants have similarly failed to establish their burden that the public interest weighs in favor of the Netherlands.  *DiRienzo*, 294 F.3d at 30-31.  The public interest factors include "(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing

jury duty on a community with no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) avoiding difficult problems in conflict of laws and the application of foreign law." *Id.* at 31.

In *DiRienzo*, the Second Circuit determined that the public interest factors did not weigh substantially in defendants' favor and the court dismissed the defendants' forum non conveniens argument. *Id.* at 31-34. The court explained that both local and national interests warranted suit in the United States rather than abroad due to the "bona fide connection [of this case] to the United States," and thus the Second Circuit had an interest in enforcing domestic laws. *Id.* at 28, 31-34. Therefore, the Second Circuit concluded that defendants had not met their burden with regards to dismissal on forum non conveniens grounds. *Id.* at 33-34.

Defendants have fallen substantially short of their burden in establishing that the public interest factors weigh heavily in their favor, typically in light of the strong interests in trying this case at home. This court and community have a strong interest in adjudicating Mr. Lust's claims because Mr. Lust was a permanent resident working in New York for four years and still maintains a residence here. *See* Lust Decl. at ¶ 3, 27. NPS and Defendant Kuyl violated federal, state, and local laws in discriminating against Mr. Lust based on his Parkinson's disease and subsequently demoting Mr. Lust in retaliation for his lawsuit against Defendants. The United States and the State and City of New York have a keen interest in enforcing federal, state, and local laws against employers that violate the rights of employees within their borders. Indeed, while the Americans with Disabilities Act "does not apply to the foreign operations of foreign employers," Congress did not intend "to exempt the domestic workplaces of foreign employers" from federal employment discrimination law. *Morelli v. Cedel*, 141 F.3d 39, 42-43 (2d Cir. 1998). Defendants would be escaping their obligations to abide by U.S. federal, state, and local

laws if this Court granted the motion to dismiss as Defendants should be accountable for invidious discrimination against an employee stationed in New York.  Therefore, the Court should deny Defendants' motion to dismiss on forum non conveniens grounds.

**D.** **Defendants' Motion To Dismiss Is An Act Of Forum Shopping**

Defendants disingenuously argue that the commencement of this action in New York was an act of forum shopping.  This is the proverbial pot calling the kettle black.  As stated at length above, the facts underlying Mr. Lust's claims arose in New York where he both lived and worked and key witnesses to his claims currently reside in New York.  Lust Decl. at ¶ 3, 27.  Tellingly, Defendants transferred Mr. Lust out of New York and back to the Netherlands only *after* he commenced this action in the hope that it would bolster their motion to dismiss this action on grounds of inconvenience.  Specifically, Daalmeijer offered that Mr. Lust could keep working with his wife and report on foreign stories.  *Id.* at ¶ 20.  However, in December 2010, Daalmeijer withdrew the proposal as punishment for Mr. Lust instituting legal action against the Company.  *Id.*  In the Netherlands, as Defendants certainly are aware, Mr. Lust's substantive and remedial rights are severely prejudiced and, as a result, Defendants' potential liability is significantly decreased in a Dutch court.  Defendants are well aware that requiring Mr. Lust to litigate in the Netherlands may result in no legal action whatsoever.  Defendants' concern is not for convenience, but for their own financial exposure.  The Second Circuit has cautioned that "just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of forum non conveniens not because of genuine concern with convenience but because of similar forum shopping reasons." *Iragorri*, 274 F.3d at 75 (denying defendant's motion to dismiss argument, in part, due to back-door forum shopping on part of defendant).  The Court should not permit Defendants' attempt to shop for a more

favorable forum, when Plaintiff has a sound and practical basis for litigation of his case before this Court.

## II.   THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

Where a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff need only make a "prima facie" showing of personal jurisdiction. *Levisohn Lerner Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F. Supp. 2d 334, 338-39 (S.D.N.Y. 1998). This entails "'an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant.'" *Id.* at 339 (quoting *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996)). Moreover, "[u]nder such circumstances, allegations in the pleadings and affidavits 'are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.'" *Id.* (quoting *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)). As described below, personal jurisdiction takes two forms: general and specific.

### A.   This Court Has General Personal Jurisdiction Over Defendant NPS

General personal jurisdiction conveys a court with jurisdiction over a party, regardless of the specific wrongdoing alleged. *See* N.Y. C.P.L.R. 301 (McKinney 2010). When a party seeks the court to exercise personal jurisdiction over a foreign company under Rule 301, it must determine whether the corporate entity is "doing business in New York." *Laufer v. Ostrow*, 434 N.E.2d 692, 694 (N.Y. 1982). To meet this threshold, the plaintiff must show that the defendant entity is "engaged in [a] continuous and systematic course of doing business." *Id.* (citations and internal quotation marks omitted). If successful, the court has personal jurisdiction over the corporate entity regardless of the facts bringing rise to the suit.

Defendant NPS is subject to general personal jurisdiction in New York because of its continuous and systematic business contacts with the state.  To invoke general personal jurisdiction over a defendant entity, the court must examine the "foreign corporation's activities in the state," including "whether the corporation has an office in New York, the presence of a bank account or property, any employees working for the defendant, and the solicitation of business in the state by the company or its agent."  *Central Gulf Lines, Inc. v. Cooper/T. Smith, Stevedoring*, 664 F. Supp. 127, 129 (S.D.N.Y. 1987) (finding lack of personal jurisdiction where none of these factors were present in relation to foreign corporation).

In *Laufer*, the New York Court of Appeals exercised personal jurisdiction over a foreign corporation because it was "doing business in New York," even though the company had no office, telephone number, or bank account in the state, because the company stationed employees in New York to regularly engage in sales activity.  434 N.E.2d. at 695.  Therefore, the court denied the motion to dismiss on personal jurisdiction grounds against the defendant corporation.  *Id.* at 696.

NPS fits the "doing business" test even moreso than the defendant company in *Laufer*.  Since 2001, NPS has stationed a U.S. correspondent in New York.[3]  Lust Decl. at ¶ 35.  Currently, Tom Kleijn serves as the U.S. correspondent for NTR, NPS's successor company.  *Id.* at ¶ 33.  All of the correspondents, including Mr. Lust and now Mr. Kleijn, have set up offices in New York and NPS had to employ others to assist in production, including camera operators and interns.  *Id.* at 36.  NPS expected that its U.S. reporters would solicit business in New York, as evidenced by their supplying Mr. Lust with business cards bearing his New York address.  Reid

---

[3]      NPS's predecessor, NOS, had reporters stationed in New York beginning in 1974.  In 1980, the office moved to Washington, D.C. and stayed there until 2001.

Decl. Ex. A.  NPS set up a bank account in New York for Mr. Lust with the Company's own

funding so that Mr. Lust could travel and pay expenses associated with his business.  *Id.* at ¶ 3.

Besides the U.S. correspondent and his crew, NPS would send large crews of producers and

technicians to the United States on special occasions, such as presidential elections.  *Id.* at ¶ 5.

As a public broadcast company, the very essence of NPS' business is reporting the news, which

was exactly what the U.S. correspondent job entailed.  This systematic and continuous stream of

U.S. correspondents reporting the news while stationed in New York falls within the meaning of

"doing business in New York."  Therefore, NPS is subject to personal jurisdiction under section

301.

In addition, NPS's own admissions allow this court to exercise general personal

jurisdiction.  In a letter dated August 2, 2010, NPS attorney Ferdinand Grapperhaus wrote to

Plaintiff's attorney that "NPS has at all times been, and continues to be, in compliance with all

employment-related laws applicable to its employees working in the United States, including,

without limitation, the Americans with Disabilities Act."  Reid Decl. Ex. B.  The plain language

of this letter admits that NPS employees working in the United States, such as Mr. Lust during

his tenure as U.S. correspondent, are protected by U.S. law.  Therefore, NPS recognizes that it is

subject to jurisdiction in the United States and, since Mr. Lust lived and worked in New York,

this is the proper forum to bring his claims.

**B.**      **This Court Has Specific Personal Jurisdiction Over Defendant NPS**

Specific personal jurisdiction allows a court to exercise jurisdiction over a party when the

claims alleged specifically arise from that party's conduct in New York.  In federal question

cases, specific personal jurisdiction over a non-domiciliary depends upon a two-part inquiry.

First, the court must examine the state's long-arm statute to determine whether it has personal

jurisdiction over the defendant.  *Levisohn Lerner Berger & Langsam v. Med. Taping Sys., Inc.*,

10 F. Supp. 2d 334, 339 (S.D.N.Y. 1998) (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d

25, 27 (2d Cir. 1997)) (additional citations omitted).  Second, if the court determines it has

personal jurisdiction under the long-arm statute, it must then "determine whether exercise of

such jurisdiction would comport with the requirements of due process under the federal

Constitution."  *Id.* (citing *Bensusan*, 126 F.3d at 27).

       1.     New York's Long-Arm Statute Conveys Specific Personal Jurisdiction

      New York's long-arm statute conveys personal jurisdiction over a non-domiciliary who

"(1) transacts any business within the state . . .; or (3) commits a tortious act without the state

causing injury to person or property within the state . . . if he . . . (ii) expects or should

reasonably expect the act to have consequences in the state and derives substantial revenue from

interstate or international commerce; or (4) owns, uses or possesses any real property situated

within the state."  N.Y. C.P.L.R. 302(a) (McKinney 2010).  Although personal jurisdiction

applies if only one of the above long-arm branches applies, all three apply in this case.

Therefore, since due process also comports with extending personal jurisdiction over Defendants

in this case, this Court has personal jurisdiction and should deny Defendants' motion to dismiss

on those grounds.

       a.     NPS Transacted Business in New York Under § 302(a)(1)

      To establish personal jurisdiction under § 302(a)(1), the plaintiff must show that "(1)

[t]he defendant . . . transacted business within the state; and (2) the claim asserted must arise

from that business activity."  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt, LLC*, 450 F.3d

100, 103 (2d Cir. 2006) (citations omitted).  A plaintiff meets this first prong by establishing the

defendant's minimum contacts with the state which, in New York, means that the defendant

"purposefully avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws." *SAS Group, Inc. v. Worldwide Inventions,*

*Inc.*, 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003) (citations and internal quotation marks omitted).

The second prong is established where there is a "'substantial nexus' between the business

transacted and the cause of action sued upon." *Id.* (citations omitted).

The Southern District has applied the "transacts business" long-arm clause to non-

domiciliaries in discrimination cases.  In *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch.*,

LLC, 470 F. Supp. 2d 345, 360 (S.D.N.Y. 2007), the court held that it had personal jurisdiction

pursuant to section 302(a)(1) over Plaintiff's out-of-state supervisors for her gender

discrimination claims.[4]  Plaintiff worked for the foreign corporation out of an office in her home.

*Id.* at 358.  The communications and work assignments that Plaintiff alleged were discriminatory

were sent to Plaintiff by the individual defendants "via telephone, email, and fax to her home

office in New York." *Id.* at 358-59.  The court found that these communications and

assignments were business transactions under the first prong of the test.  *Id.*  Additionally,

because these communications and assignments "form the substantive basis" for the plaintiff's

claims against the defendants, the court held that the transactions had a sufficient nexus to the

cause of action and exercised personal jurisdiction over the individual defendants.  *Id.* at 359; *see*

*also Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 210 (E.D.N.Y. 1996) (exercising

personal jurisdiction under section 302(a)(1) over foreign employer based on defendant's

---

[4]      The court did not reach the issue of whether it had personal jurisdiction over the
defendant employer because only the "Individual Defendants move[d] to dismiss all of the
claims against them for lack of personal jurisdiction." *Int'l Healthcare Exch.*, 470 F. Supp. 2d at
358.  The court held that certain claims against the defendant company still remained intact
following the motion to dismiss, implying that it had personal jurisdiction over the Company,
which was based in Chicago.  *Id.* at 353.

communications with plaintiff in New York and decision not to rehire made at meeting in New York, thereby purposefully availing itself of jurisdiction in the state).

Similarly, the facts of this case satisfy both prongs of the "transacts business" test.  Mr. Lust had a home office in New York and was in constant communication with his employer, NPS, in the Netherlands.  *See* Lust Decl. at ¶ 3, 12.  These communications and the fact that NPS had employees stationed in New York establish that Defendant was transacting business within the state.  NPS also expected that its U.S. reporters would solicit business in New York, as evidenced by their supplying Mr. Lust with business cards bearing his New York address.  *See* Reid Decl. Ex. A.  Furthermore, Defendant's stationing of Mr. Lust and his camera operator, Mrs. Lust, in New York constituted purposeful availment of the benefits and protections of New York law.  *See* Lust Decl. at ¶ 3-5.  Therefore, the first prong of the "transacts business" test is met.  Additionally, Mr. Lust's discrimination and retaliation claims arise directly from his employment in New York and his discriminatory extradition from his position as U.S. correspondent and subsequent demotion to "special reporter."  There is no conceivable way to separate the discrimination and retaliation from NPS's business transactions in New York. Therefore, there is a substantial nexus between the causes of action and the business transactions and both prongs of the "transacts business" test are met.  NPS is, thus, subject to personal jurisdiction under section 302(a)(1).

        b.     <u>NPS's Conduct Was Felt Within The State</u>

NPS's discriminatory and retaliatory demotion of Mr. Lust from his position as U.S. correspondent conferred personal jurisdiction over the company in New York under Rule 302(a)(3)(ii).  Pursuant to this branch of the New York long-arm statute, a foreign entity is subject to personal jurisdiction when it commits a tortious act outside of New York and the

impact is felt within the state, subject to certain revenue requirements.  N.Y. C.P.L.R. 302(a)(3)(ii) (McKinney 2010).  The term "tortious act" encompasses discrimination and other violations beyond mere torts.  *Launer*, 916 F. Supp. at 210-11 (citing *United States v. Burke*, 504 U.S. 229, 246 (1992)).  Therefore, Mr. Lust's claims qualify for examination of personal jurisdiction under this long-arm branch.

In *Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 211 (E.D.N.Y. 1996), the court found that it had personal jurisdiction over the defendant company regarding the plaintiff's discrimination claims where the company was based in California but its allegedly discriminatory actions were felt in New York.  The plaintiff alleged that his termination and the employer's failure to rehire him were based on his religion.  *Id.* at 208.  The defendant employer, which was both licensed and headquartered in California, made the decisions to terminate and decline to rehire plaintiff in California, but communicated the decision to plaintiff in a meeting in New York where the plaintiff lived and worked.  *Id.* at 210.  Reasoning that "the injury . . . was received in New York where plaintiff had been working for defendants and had been negotiating for his job," the court found that the defendant had committed the equivalent of a tortious act out-of-state with consequences in New York.  *Id.* at 211.  Furthermore, the court stated that a plaintiff establishes the "substantial revenue from interstate or international commerce" requirement by demonstrating defendant's derivation of either a "substantial sum of money" or a "substantial portion of its total revenue" from out-of-state commerce.  *Id.* Because defendant's second-biggest market was New York, the court found plaintiff had established this requirement and subsequently held that the Eastern District had jurisdiction over the defendant.  *Launer*, 916 F. Supp. at 212.

Defendant NPS's discriminatory and retaliatory removal of Mr. Lust from his position as U.S. correspondent and subsequent demotion are akin to the discriminatory behavior engaged in by the *Launer* defendants, which were subjected to personal jurisdiction under section 302(a)(3)(ii).  Although NPS made the decision to remove Mr. Lust from his post based on his Parkinson's disease in their Dutch headquarters, the impact of that decision fell squarely on Mr. Lust in New York.  He had achieved his dream job, and this prestigious position was suddenly ripped from his grasp, forcing him to move from New York back to the Netherlands with his wife, who was carrying their first child.  Lust Decl. at ¶ 10, 20-21.  Although Defendants incorrectly claim that they only had one employee in New York, *Id.* at ¶ 3-5, the employee they refer to is their U.S. correspondent: Mr. Lust.  NPS's commercial activities also meet the revenue requirements because the Company gains substantial revenue from international commerce.  For example, in 2010, NPS received 190,000 euro from Time Warner, Inc. for broadcasting rights. *See* Reid Decl. Ex. C (NPS 2010 Financial Statements), at 12.  190,000 euro certainly qualifies as a "substantial sum of money," as required under the *Launer* analysis.  Therefore, because the discriminatory behavior falls within the coverage of section 302(a)(3)(ii) and Mr. Lust felt the full impact of NPS's discrimination in New York, this court has personal jurisdiction over the Company.

c.    <u>NPS Used and Uses Property Within the State</u>

NPS is also subject to personal jurisdiction in this Court pursuant to section 302(a)(4) of the New York C.P.L.R. because it used real property in the state.  A party is subject to personal jurisdiction if it "owns, **uses** or possesses any real property situated within the state."  N.Y. C.P.L.R. 302(a)(4) (McKinney 2010) (emphasis added).  In this case, Mr. Lust maintained a

home office so that he could perform his duties as the U.S. correspondent for NPS.[5]  Lust Decl. at ¶ 3.  On occasion, NPS employees other than Mr. and Mrs. Lust used the home office for editing and filing stories, and the Lusts were not compensated for this use.  *Id.* at ¶ 5.  The home office was considered NPS property for the purpose of reporting the news over NPS broadcasts. *Id.* at ¶ 3-5.  Therefore, the Company used real property within New York and is subject to personal jurisdiction under this branch of the New York long-arm statute.

2.      <u>Permitting Personal Jurisdiction Over NPS Comports With Due Process</u>

This Court may exercise long-arm jurisdiction under the three aforementioned branches of the statute because doing so would satisfy constitutional due process standards.  If the exercise of personal jurisdiction "comports with 'traditional notions of fair play and substantial justice,'" then a court has personal jurisdiction over the party.  *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In *Sunward*, the Second Circuit found that New York exercising personal jurisdiction over the defendants in a breach of contract matter comported with due process norms where the defendants' contacts with the state "were continuous and substantial, and in no way random, fortuitous or attenuated."  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985)). The defendants had entered into a dealership agreement with the plaintiff and, in fulfillment of the contract, had to send employees to travel to New York, purchased supplies from New York, and mailed payments and other items to New York.  *Id.* at 23.  The Second Circuit affirmed the district court's ruling that such contacts were "continuous and substantial" and, thus, personal jurisdiction over defendants in New York comported with due process.  *Id.* at 24.

---

[5]      Additionally, the Company currently uses real property in the state, as Mr. Kleijn has set up an office in New York to carry out his duties as the current U.S. correspondent for NPS's successor NTR.  Lust Decl. at ¶ 33.

NPS's contacts with New York have been similarly continuous and substantial.  Mr. Lust himself was the U.S. correspondent stationed in New York and reporting the news for NPS for four years.  Lust Decl. at ¶ 2.  His successors date back to at least 2001, *Id.* at ¶ 35, and Mr. Kleijn currently has an office in New York and serves as the U.S. correspondent for NPS's successor NTR.  *Id.* at ¶ 33.  Thus, NTR and its successor companies have had a steady stream of employees in New York for decades.  In a suit where one of these individuals claims wrongdoing by NPS, it is only fair to expect that New York has jurisdiction over the Defendant.  Therefore, personal jurisdiction in this case comports with due process and this Court should exercise jurisdiction over NPS.

### C.   This Court Has Personal Jurisdiction Over Defendant Kuyl

#### 1.   The New York Long-Arm Statute Applies to Kuyl

This Court has personal jurisdiction over Defendant Kuyl pursuant to the "transacts business" test of New York C.P.L.R. section 302(a)(1).  As discussed previously, the plaintiff must show that "(1) [t]he defendant . . . transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Sole Resort, S.A. de C.V.*, 450 F.3d at 103 (citations omitted).  The business transactions "must entail purposeful activity in the state" to satisfy the first prong, and if such activity "bears a substantial nexus with the claim," the second prong is met.  *Int'l Healthcare Exch.*, 470 F. Supp. 2d at 358.  In *International Healthcare Exchange*, the Southern District found that it had personal jurisdiction under section 302(a)(1) over the plaintiff's two supervisors who communicated discriminatory assignments over the telephone, email and fax to her home office in New York.  *Id.* at 359.  The court reasoned that business transactions under this branch of the long-arm statute "may consist of telephone calls or other communications directed into the state," and determined that "a substantial portion of [the

individual defendants'] communications to [the plaintiff] form the substantive basis for her claims against them." *Id.* at 358-59.  Thus, the court determined that it could exercise personal jurisdiction over the individual defendants.

Kuyl's involvement in Mr. Lust's discriminatory removal from his post as U.S. correspondent and subsequent retaliatory demotion to "special reporter" is similar to the involvement of the individual defendants in *International Healthcare Exchange*.  As Mr. Lust's direct supervisor, Kuyl communicated frequently with Mr. Lust and critiqued his New York broadcasts from the Netherlands.  Lust Decl. at ¶ 12-13, 19.  It was Kuyl's decision to pull Mr. Lust from the screen, and many of the discriminatory communications came via telephone and email between Kuyl in the Netherlands and Mr. Lust stationed in New York.  *Id.* at ¶ 12-13, 19.  Because Kuyl's discriminatory treatment and remarks to Mr. Lust form a large part of the basis for Mr. Lust's claims, there is a substantial nexus between the business transactions and the discrimination and retaliation claims themselves.  Therefore, this Court may exercise personal jurisdiction over Defendant Kuyl.

2.      Permitting Personal Jurisdiction Over Kuyl Comports With Due Process

This Court may exercise long-arm jurisdiction over Defendant Kuyl because doing so would satisfy constitutional due process standards.  If the exercise of personal jurisdiction "comports with 'traditional notions of fair play and substantial justice,'" then a court has personal jurisdiction over the party.  *Sunward*, 362 F.3d at 24 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).  The frequency and nature of Kuyl's communications with Mr. Lust in New York were substantial.  Although Kuyl may not have reasonably expected to be subject to jurisdiction in New York in an unrelated matter, his constant contact with a subordinate in New York should have alerted him to the fact that he was subject to that jurisdiction's laws.  There would be no

unfairness to expect Kuyl to defend against claims in New York arising out of his continuous

communications that gave rise to a discrimination and retaliation suit.  For these reasons,

exercising personal jurisdiction over Kuyl would comport with constitutional due process and,

therefore, Kuyl is subject to personal jurisdiction in this Court.

### CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny

Defendants' motion to dismiss and order that this matter proceed on the merits.


Dated: New York, New York                    Respectfully submitted,
      June 6, 2011

                                     THOMPSON WIGDOR LLP

By: _____
                          Douglas H. Wigdor
                          David K. Reid

                          85 Fifth Avenue
                          New York, NY 10003
                          Tel. (212) 257-6800
                          Fax. (212) 257-6845
                          dwigdor@thompsonwigdor.com
                          dreid@thompsonwigdor.com

                          *Attorneys for Plaintiff*

24